IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GEORGE TOMPKINS,  )
Reg. No. 36417-479,  )
  )
Petitioner,  )
  )
v.  )  CASE NO. 2:25-CV-215-WKW
  )  [WO]
WARDEN WASHINGTON,  )
  )
Respondent.  )

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Petitioner George Tompkins, an inmate incarcerated at the Federal Prison Camp in Montgomery, Alabama ("FPC Montgomery") and proceeding *pro se*, filed this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. # 1.) He argues that his earned time credits under the First Step Act of 2018 (FSA), *see* Pub. L. No. 115-391, 132 Stat. 5194, have been unjustly withheld due to the Federal Bureau of Prisons' (BOP) reliance on a regulation he argues unlawfully exceeds the BOP's statutory authority. (Docs. # 1, 14.) In his petition, he seeks the application of these credits to secure an immediate transfer to prerelease custody. (Doc. # 1 at 7.) In response, Respondent argues that Petitioner's § 2241 petition should be dismissed because under 18 U.S.C. § 3625, the court lacks subject matter jurisdiction to review the BOP's decision concerning the calculation of Petitioner's FSA earned

time credits.  (Doc. # 11 at 12–15.)  Alternatively, Respondent contends that if subject matter jurisdiction exists, Petitioner's failure to exhaust administrative remedies before seeking habeas relief necessitates the dismissal of the petition. (Doc. # 11 at 3.)  Thereafter, Petitioner was directed to file a reply and was given an opportunity to submit any supporting affidavits, declarations, or documents.  (Doc. # 12.)  In his reply brief, Petitioner clarifies that he is pursuing judicial review of the regulations upon which the BOP relied to withhold his FSA earned time credits and that he is not challenging the BOP's decision to withhold those credits in his case. (*See* Doc. # 1 at 3–7, as clarified in Doc. # 14 at 4–5.)  However, he argues that, if exhaustion is a requirement, it should not apply in his case, claiming unavailability and futility as exceptions to exhaustion.  (*See* Doc. # 1 at 2; Doc. # 14 at 1.)

For the reasons to follow, Respondent's response (Doc. # 11) is construed as containing: (1) a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction; and (2) a Rule 12(b) motion to dismiss for failure to exhaust administrative remedies.  The first motion will be denied, while the second motion will be granted without prejudice.  No evidentiary hearing is necessary to resolve these motions.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* [hereinafter, *Rules Governing § 2254 Cases*].[1]

---

[1] The *Rules Governing § 2254 Cases* apply to petitions under 28 U.S.C. § 2241.  *See* Rule 1(b), *Rules Governing § 2254 Cases* (providing that the § 2254 Rules apply to habeas corpus petitions filed under provisions other than § 2254).

## II. BACKGROUND

On June 25, 2020, the United States District Court for the Southern District of Texas sentenced Petitioner to 120 months' imprisonment and three years' supervised release based on multiple convictions, including for conspiracy to defraud the United States and pay healthcare kickbacks and conspiracy to commit healthcare fraud. *See United States v. Tompkins*, No. 4:18-CR-40 (S.D. Tex. June 30, 2020), ECF No. 207. His release date, according to the BOP, is August 1, 2028. *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Nov. 19, 2025).[2]

In 2018, Congress passed the FSA to broaden prisoners' access to non-custodial placements. *See* Pub. L. No. 115-391, 132 Stat. 5194 (2018) (codified at 18 U.S.C. §§ 3621, 3624, 3631–35). The FSA's provisions work together to motivate eligible inmates to participate in recidivism-reduction programs by awarding them earned time credits. §§ 3621(h), 3624(g), 3632. Participants may earn 10 days, or in some instances 15 days, of credit for every 30 days of successful program participation. Each earned time credit equals one day. *See* 18 U.S.C. §§ 3621, 3624, 3631–35. Under the FSA, earned time credits are applied to

---

[2] This court takes judicial notice of the public records maintained on the BOP's website. *See* Fed. R. Evid. 201(c); *see also Naveleski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1300 n.25 (N.D. Fla. 2017) ("[I]t is not uncommon for courts to take judicial notice of factual information found on official governmental agency websites."); *United States v. Basher*, 629 F.3d 1161, 1165 n.2 (9th Cir. 2011) (taking judicial notice of the BOP's publicly accessible Inmate Locator records).

accelerate an inmate's transfer either to prerelease custody, which includes residential reentry centers and home confinement, or to supervised release if such a term has been imposed. *See* 18 U.S.C. § 3624(g).

In his petition, which is dated February 22, 2025, Petitioner alleges that he is eligible to earn FSA time credits. He contends that he has earned the maximum number of FSA time credits—365—that can be applied to reduce his sentence. (Doc. # 1 at 3); § 3624(g)(3). However, he argues that additional FSA time credits have been improperly withheld, affecting his time in prerelease custody. (Doc. # 1 at 4–6.) He elaborates on this issue as follows.

On September 5, 2024, the BOP introduced a tool to estimate an inmate's FSA conditional placement date. (Doc. # 1 at 4.) The FSA conditional placement date is the date on which a prisoner potentially is eligible for prerelease custody based on projected FSA earned time credits. *See Crowe v. Fed. Bureau of Prisons*, 2025 WL 1635392, at *4 (D.D.C. June 9, 2025), *appeal docketed*, No. 25-5296 (D.C. Cir. Aug. 18, 2025). According to Petitioner, the tool initially projected his FSA conditional placement date as December 20, 2025. (Doc. # 1 at 4, ¶ 21; *see also* Doc. # 1-1 at 2 (BOP's FSA Time Credit Assessment, dated Sep. 5, 2024).) However, he argues that this date does not account for any Second Chance Act (SCA) credits,[3] indicating

---

[3] Congress enacted the Second Chance Act (SCA) to "assist offenders reentering the community from incarceration to establish a self-sustaining and law-abiding life by providing sufficient transitional services." Pub. L. No. 110-199, § 3(a)(5), 122 Stat. 657 (2008). The SCA helps

that with these credits applied, he would have been eligible for prerelease custody on December 20, 2024.  (Doc. # 1 at 4.)  He contends that in October 2024, the BOP improperly changed the projection inputs, affecting the imprisonment of "thousands of inmates," including his.  (Doc. # 1 at 5, ¶ 25.)  Specifically, Petitioner received an FSA Time Credit Assessment dated December 30, 2024, which reduced his projected FSA conditional placement days from 955 days to 640 days, thus extending his conditional placement date from December 20, 2025, to October 31, 2026.  (Doc. # 1 at 5, ¶ 25; *see also* Doc. # 1-2 at 2 (BOP's FSA Time Credit Assessment, dated Dec. 30, 2024); Doc. # 1-1 at 2.)  In his petition, he argues that the BOP calculated this new date by projecting only his FSA time credits up to the conditional placement date.  Under this new calculation, the BOP improperly "does not apply all the FSA credits earned while the inmate is at a halfway house or on home confinement."  (Doc. # 1 at 5, ¶ 26.)  In his petition, Petitioner requests an order directing "Respondent to immediately send [him] to prerelease custody (either home confinement or halfway house)."  (Doc. # 1 at 7.)

However, in his reply brief, Petitioner clarifies that he "is not asking this Court to review the individualized administrative decision to withhold FSA credits from

offenders reintegrate by expanding access to prerelease custody for up to 12 months "to the extent practicable."  18 U.S.C. § 3624(c)(1).  Under the SCA, prerelease custody includes placement in home confinement for the shorter of 6 months or 10% of the prisoner's term of imprisonment. § 3624(c)(2).  The SCA predates the FSA and was the only mechanism for prerelease custody for BOP prisoners until the FSA passed.

him." (Doc. # 14 at 4.) Rather, he is seeking judicial review of the allegedly "unlawful BOP regulation[s]," 28 C.F.R. §§ 523.42 and 523.44, which he says the BOP improperly is using to withhold his FSA earned time credits, in violation of statutory authority. (Doc. # 14 at 4–5.)

As to these clarified contentions, Petitioner does not mention any attempt to exhaust the BOP's administrative-remedy program and seemingly concedes this failure by stating, "Petitioner prays that this Court accept this Emergency Petition without requiring Petitioner to futily [sic] attempt to exhaust his administrative remedies . . . ." (Doc. # 1 at 7.) However, federal prisoners, like Petitioner, are subject to the BOP's administrative-remedy program, codified at 28 C.F.R. § 542.10 *et seq.* (Doc. # 11-1 at 3, ¶ 6 (Decl. of A. McCall Young).) This program comprises a four-step process that a prisoner must follow to exhaust his administrative remedies. (Doc. # 11-1 at 3, ¶ 6); *see also Shivers v. United States*, 1 F.4th 924, 935 (11th Cir. 2021). First, the prisoner must submit an institutional-level "informal resolution" request (typically a BP-8 form). *See* 28 C.F.R. § 542.13(a). Second, the prisoner must file a BP-9 form within 20 days following the alleged incident that serves as the basis for the request, unless the inmate demonstrates a valid reason for delay. *See* § 542.14(a). Third, if unsatisfied with the warden's response, an inmate may submit an appeal using a BP-10 form to the appropriate regional director within 20 days of the date the warden signed the response. *See* § 542.15(a). Fourth, an

6

inmate who is unsatisfied with the regional director's response may submit an appeal to the general counsel using the appropriate BP-11 form within 30 days of the date the regional director signed the response. *See id.*

The regulations also provide response times at each level of the administrative-remedy program. *See* § 542.18. At the institutional level (BP-8 and BP-9), 20 calendar days from the date of filing are allotted to respond to an inmate's request.[4] At the BP-10 level, the regional director has 30 calendar days to respond. At the BP-11 level, the BOP's general counsel has 40 calendar days to respond. *Id.* An inmate exhausts administrative remedies only after properly and timely seeking review at all four levels.

With this factual background, the parties' arguments are now examined.

### III. DISCUSSION

**A.     The Construed Motions to Dismiss**

Respondent's response challenges the court's subject matter jurisdiction and alternatively, the petition's prematurity for Petitioner's failure to exhaust administrative remedies. Under the authority of the *Rules Governing § 2254 Cases*, these challenges are construed as Rule 12 motions to dismiss. *See* Fed. R. Civ. P. 12(b). Although the *Rules Governing § 2254 Cases* do not address motions to

---

[4] The "date of filing" is "the date [a request or appeal] is logged into the Administrative Remedies Index as received." 28 C.F.R. § 542.18.

dismiss, they permit the application of the Federal Rules of Civil Procedure when there is no conflict with the habeas statutes or rules.  Rule 12, *Rules Governing § 2254 Cases*.  In this instance, applying Rule 12(b) of the Federal Rules of Civil Procedure does not present any conflict.

**B.**    **Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Section 2241(a) grants jurisdiction to district courts to provide habeas relief to an inmate who is confined within the court's district at the time his petition is filed.  Respondent has not contested this court's statutory jurisdiction as conferred by § 2241(a).  *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 n.7 (2004) ("The word 'jurisdiction,' of course, is capable of different interpretations.  We use it in the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court."); *see also Fernandez v. United States*, 941 F.2d 1488, 1495 (11th Cir. 1991) ("Section 2241 petitions may be brought only in the district court for the district in which the inmate is incarcerated.").  Rather, Respondent argues that 18 U.S.C. § 3625 eliminates this court's subject matter jurisdiction over Petitioner's claims challenging the BOP's individualized decisions regarding his FSA earned time credits.  (*See* Doc. # 11 at 12–15.)  In light of Petitioner's clarification of his claims in his reply brief, however, Respondent's argument is no longer applicable.

Section 3625 explicitly states that the provisions of the Administrative Procedure Act (APA) related to judicial review, found in 5 U.S.C. §§ 701–706, do not apply to any "determination, decision, or order" made by the BOP under 18 U.S.C. §§ 3621 through 3626. Section 3625's directive deprives the court of subject matter jurisdiction to review decisions made by the BOP under these sections. *See Reeb v. Thomas*, 636 F.3d 1224, 1225–29 (9th Cir. 2011) (discussing § 3625's preclusion as affecting subject matter jurisdiction). However, "§ 3625 does not preclude judicial review where the petitioner challenges the underlying regulations that establish the criteria governing the BOPs decision-making process." *Woolsey v. Washington*, 2025 WL 2598794, at *12 (M.D. Ala. Sept. 8, 2025) (citing *Cook v. Wiley*, 208 F.3d 1314, 1314 (11th Cir. 2000); *United States v. Warmus*, 151 F. App'x 783, 786 (11th Cir. 2005) (per curiam); and *Byrd v. Hasty*, 142 F.3d 1395, 1397 (11th Cir. 1998)).

In his petition, Petitioner alleges that "the BOP has refused to apply the FSA early prerelease credits earned while in [a] halfway house or [on] home confinement as 18 U.S.C. § 3624(g) requires them [sic] to do." (Doc. # 1 at 6.) In his reply brief, Petitioner clarifies that he is seeking judicial review of the BOP's regulations, 28 C.F.R. §§ 523.42 and 523.44, which he claims are "being used by the BOP to withhold [FSA earned time] credits." (Doc. # 14 at 4.) He argues that the regulations exceed the BOP's statutory authority because they "treat[] the earning and

application of [FSA earned time credits] as permissive, rather than mandatory" as required by 18 U.S.C. §§ 3624(g) and 3632(d)(4)(C), the latter of which also references § 3624(g). (Doc. # 14 at 4, 5.) He emphasizes that he is not challenging the BOP's individualized decisions regarding his FSA earned time credits. (Doc. # 14 at 4.) Although Petitioner's § 2241 petition does not cite these BOP regulations or clearly formulate the claims, Petitioner's reply brief serves as a clarification and more definite statement of his petition. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). Because Petitioner is challenging the BOP's regulations rather than the BOP's individualized decisions made under those regulations, Petitioner has alleged a pathway for judicial review. Respondent's motion to dismiss for lack of subject matter jurisdiction thus will be denied.

C.    **Rule 12(b) Motion to Dismiss for Failure to Exhaust Administrative Remedies[5]**

Respondent contends that Petitioner's § 2241 petition should be dismissed due to Petitioner's failure to exhaust administrative remedies. (Doc. # 11 at 3–7.) In support of this argument, Respondent has provided a declaration from a BOP

---

[5] "That motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b) is not unusual or problematic." *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008). "[E]xhaustion should be decided on a Rule 12(b) motion to dismiss; and in fact, this Circuit has previously done so." *Id.*

attorney advisor (Doc. # 11-1 (Decl. of A. McCall Young)), who outlines the administrative remedy process at the BOP, as described in Part II (Doc. # 11-1 at 3, ¶¶ 6–7) and confirms that Petitioner has not filed any administrative remedy "related to the claims made in his Petition." (Doc. # 11-1, at 4, ¶ 11.) Furthermore, Respondent argues that the futility exception to exhaustion, which Petitioner attempts to invoke in his petition, does not apply to § 2241 exhaustion. (Doc. # 11 at 5–6.)

In his reply brief, Petitioner does not dispute Respondent's contentions or evidence. Rather, he asserts that exhaustion is not a prerequisite under § 2241. Alternatively, if exhaustion is a requirement, he argues against it in his case, citing the unavailability exception from *Ross v. Blake*, 578 U.S. 632 (2016), and claiming futility as an exception. (*See* Doc. # 1 at 2; Doc. # 14 at 1.)

The following discussion pertaining to the motion to dismiss for failure to exhaust administrative remedies unfolds in six parts. First, it rejects the argument that § 2241 does not require exhaustion. Second, it addresses the necessity for a § 2241 petitioner to exhaust all available administrative remedies within the applicable prison system before filing the petition. Third, it explores the unavailability exception to the administrative exhaustion requirements. Fourth, it examines the two-step analysis for motions to dismiss based on failure to exhaust administrative remedies. Fifth, it considers the potential and unsettled nature of a

futility exception to the exhaustion requirement.  Sixth, the petition is analyzed using the two-step process.

### 1. *The Judge-Made Requirement of Exhaustion Under § 2241*

Petitioner's first argument—that § 2241 does not require exhaustion—contradicts Eleventh Circuit case law.  In the Eleventh Circuit, "prisoners seeking habeas relief, including relief pursuant to § 2241, are subject to administrative exhaustion requirements."  *Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir. 2004) (per curiam), *abrogated on other grounds by*, *Santiago-Lugo v. Warden*, 785 F.3d 467, 474–75 (11th Cir. 2015).  These requirements for § 2241 petitions are "judge-made," *Santiago-Lugo*, 785 F.3d at 474, and do not originate from the Prison Litigation Reform Act of 1996 (PLRA), 42 U.S.C. § 1997e.[6]

More than a decade after the *Skinner* decision, *Santiago-Lugo* clarified that this "judge-made" exhaustion requirement "is still a requirement; it's just not a jurisdictional one."  785 F.3d at 475.  Courts cannot "disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense."  *Id.* However, they may "skip over" a properly raised exhaustion defense "if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching

---

[6] The *Skinner* court made it clear that the exhaustion requirement applicable to § 2241 petitions does not come from the PLRA.  *See* 355 F.3d at 1294 ("We, like several other circuits, have held that the PLRA does not apply to habeas petitions . . . .").  The five cases that Petitioner string cites (Doc. # 1 at 2, ¶ 8) merely recognize that the PLRA and its administrative-exhaustion requirement do not apply to habeas petitions.

the exhaustion question." *Id.* Non-jurisdictional, exhaustion requirements are "claim-processing rules, . . . which seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Id.* at 472 (cleaned up). However, the exhaustion requirement "is not merely a gratuitous hurdle imposed to inconvenience litigants. Rather, . . . it serves important purposes." *Carrillo v. Warden FPC Pensacola*, 2025 WL 1439526, at *2 (N.D. Fla. Apr. 21, 2025), *R. & R. adopted*, 2025 WL 1433556 (N.D. Fla. May 19, 2025). As summarized in *Carrillo*:

> First, [the requirement] "protects administrative agency authority," giving an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Second, it promotes efficiency because claims can sometimes be resolved at the agency level, obviating the need to proceed to federal court. "And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration."

*Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (addressing the PLRA's exhaustion requirement)); *see also Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008) (describing the PLRA's exhaustion requirement as "designed to eliminate unwarranted federal-court interference with the administration of prisons" by "seeking to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." (cleaned up)).

Here, Petitioner's failure to exhaust cannot be overlooked for two reasons. First, Respondent has properly asserted this defense in his response. Second,

addressing the merits of the petition without considering exhaustion would not simplify the analysis.

### 2.    *How a § 2241 Petitioner Exhausts Administrative Remedies*

In the context of the PLRA, the United States Supreme Court has held that "proper exhaustion" of administrative remedies is necessary. *Woodford*, 548 U.S. at 84; *see also Geter v. Baldwin State Prison*, 974 F.3d 1348, 1354 (11th Cir. 2020) ("The exhaustion requirement drawn from the PLRA means 'proper exhaustion.'" (quoting *Woodford*, 548 U.S. at 93)). To properly exhaust available administrative remedies, "the inmate must use 'all steps' that the prison makes available." *Blevins v. FCI Hazelton Warden*, 819 F. App'x 853, 856 (11th Cir. 2020) (per curiam) (quoting *Woodford*, 548 U.S. at 90). This means that "the inmate must comply with the prison's deadlines and other procedural rules, including the rules relating to the filing of appeals." *Id.* (citing *Woodford*, 548 U.S. at 90 and *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008)).

Determining the "boundaries of proper exhaustion" is done by "look[ing] to the requirements of the applicable prison grievance system." *McGuire-Mollica v. Fed. Bureau of Prisons*, 146 F.4th 1308, 1314 (11th Cir. 2025) (quoting *Sims v. Sec'y, Fla. Dep't of Corr.*, 75 F.4th 1224, 1230 (11th Cir. 2023)). Here, the grievance system is the BOP's administrative-remedy program. *See Blevins*, 819 F.

App'x at 857 ("Because Blevins is a federal prisoner, the BOP's Administrative Remedy Program procedural rules apply to her.").

### 3.    *The Unavailability of Administrative Remedies as an Exception to the § 2241 Exhaustion Requirement*

*Blevins*, drawing an analogy from PLRA decisions, recognized the unavailability of administrative remedies as an "important exception to the administrative exhaustion requirement" under § 2241, even when a prison has a formal grievance procedure.  819 F. App'x at 856.  An inmate is not obligated to exhaust remedies that are unavailable.  *Id.* (citing *Ross v. Blake*, 578 U.S. 632, 642 (2016)).  The *Blevins* court identified an "unavailable" remedy as one that "cannot capably be used to obtain some relief."  *Id.* (citing *Ross*, 578 U.S. at 641).  *Ross* outlined three circumstances where an administrative remedy, though formally in place, is essentially unavailable and thus need not be exhausted.[7]  *See* 578 U.S. at 633.  These circumstances, as articulated in *Blevins*, are:

> (1) where "despite what regulations or guidance materials may promise," the administrative process "operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) where the administrative process is "so opaque that it becomes, practically speaking, incapable of use" because "no

---

[7] In *Ross v. Blake*, the Supreme Court rejected the Fourth Circuit's "special circumstances" exception to the PLRA's exhaustion requirement.  587 U.S. 632, 638 (2016).  However, the Court recognized a "textual exception" to mandatory exhaustion in the PLRA:  "An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."  *Id.* at 642.  Although *Ross* established the excepting circumstances in the context of the PLRA, the Eleventh Circuit in *Blevins* applied these circumstances in determining whether the § 2241 petitioner's administrative remedies were unavailable, thereby exempting her from the exhaustion requirement.  *Blevins*, 819 F. App'x at 856.

ordinary prisoner can discern or navigate it," and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

819 F. App'x at 856 (quoting *Ross*, 578 U.S. at 643–44).

### 4. The Turner *Two-Step Analysis for Deciding a Motion to Dismiss for Failure to Exhaust Administrative Remedies When Unavailability is Raised*

As a general matter, failure to exhaust administrative remedies is an affirmative defense. *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). When a court reviews a motion to dismiss a § 2241 petition for the petitioner's failure to exhaust administrative remedies and the petitioner argues that remedies are unavailable, a two-step process applies. *See Blevins*, 819 F. App'x at 856 (citing *Turner*, 541 F.3d at 1082).

First, the court examines "the inmate's and respondent's factual allegations, and if they conflict, take[s] the inmate's version of the facts as true." *Id.* (citing *Turner*, 541 F.3d at 1082). If the facts show that the inmate failed to exhaust available administrative remedies, the petition "must be dismissed." *Id.* (quoting *Turner*, 541 F.3d at 1082). If the inmate's petition is not dismissed under the first step, the court "must proceed to the second step and 'make specific findings in order to resolve the disputed factual issues related to exhaustion.'"[8] *Id.* (quoting *Turner*,

---

[8] The exhaustion requirement in *Turner* originated from the PLRA. Relying on *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the court in *Turner* treated the defense of failure to exhaust under the PLRA as a matter in abatement. *Turner*, 541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1374).

541 F.3d at 1082). "And at that second step, the respondent bears the burden of proving that that inmate has failed to exhaust available administrative remedies." *Id.* (citing *Turner*, 541 F.3d at 1082). After making findings on the disputed factual issues, the court must "then decide[] whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 857 (quoting *Turner*, 541 F.3d at 1083); *see also McGuire-Mollica v. Fed. Bureau of Prisons*, 146 F.4th 1308, 1314 (11th Cir. 2025) (describing *Turner*'s two-step process).

In *Blevins*, the Eleventh Circuit applied *Turner*'s and *Ross*'s principles in the context of a § 2241 petition. *See* 819 F. App'x at 856–59. There, the petitioner argued the appeal process was unavailable for several reasons. These reasons included the regional director's repeated rejection of her appeals as illegible (despite her having used the materials provided by the prison), a disciplinary hearing officer's refusal to provide necessary materials for her appeal, and interference by prison staff with her mail. *Id.* at 858. The district court acknowledged only one of the reasons and summarily rejected it. *See id.* On appeal, the Eleventh Circuit found that the petitioner's proffered reasons aligned with the scenarios identified by the Supreme

---

A matter in abatement is "not generally an adjudication on the merits." *Bryant*, 530 F.3d at 1374. Where exhaustion is treated as a matter in abatement, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Id.* at 1376 (footnote omitted). The *Blevins* court acknowledged that "the unavailability exception stems from [PLRA] cases." 819 F. App'x at 856 n.3. It noted also that the Eleventh Circuit "ha[d] applied that exception to cases involving § 2241 petitions." *Id.*

Court in *Ross* that trigger the unavailability exception. *Id.* at 859 (citing *Ross v. Blake*, 578 U.S. 632, 643–44 (2016)).

In reversing the district court's dismissal of the petitioner's § 2241 petition, the *Blevins* court concluded that the lower court did not properly undertake the *Turner* two-step analysis, noting that had the district court accepted the petitioner's allegations as true under the first *Turner* step, the warden would not have been entitled to dismissal at that step. *Id.* at 858. The district court should have accepted the petitioner's allegations as true and proceeded to the second *Turner* step to make specific findings to resolve disputed factual issues related to exhaustion. *See id.* at 859. Those findings then could have been used to resolve the legal question "about whether the BOP rules adequately informed [the petitioner] about what to do after the Regional Director rejected her appeal as illegible for the second time." *Id.* Because the district court failed to undertake a proper review,[9] the Eleventh Circuit reversed and remanded the case for further proceedings to make the necessary findings related to the exhaustion of administrative remedies. *See id.* at 859–60.

The same year as *Blevins*, in *Geter v. Baldwin State Prison*, the Eleventh Circuit explained how the *Turner* two-step process works incorporating *Ross*:

---

[9] As noted by the Eleventh Circuit, the district court "did not hold an evidentiary hearing, call for additional discovery, or cite to anything in the Warden's motion or the record to explain why [the petitioner's] allegations were untrue." *Blevins*, 819 F. App'x at 859.

> [A] proper *Turner* analysis of exhaustion after *Ross* requires the plaintiff to allege a grievance procedure is unavailable to him in response to the defendant's affirmative defense of failure to exhaust. Responding with allegations that a prison system is unavailable allows the district court to complete the necessary analysis set forth in *Turner* for evaluating whether a defendant is entitled to have a complaint dismissed for failure to exhaust. *See Turner*, 541 F.3d at 1082 (requiring a court to compare "the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response" and accepting the plaintiff's version where there is a conflict). While the burden is on the defendant to show an available administrative remedy, once that burden has been met, the burden of going forward shifts to the plaintiff, who, pursuant to *Turner*, must demonstrate that the grievance procedure was "subjectively" and "objectively" unavailable to him. *Id.* at 1085.

974 F.3d 1348, 1356 (11th Cir. 2020) (footnote omitted).[10]

In *Geter*, it was undisputed that the plaintiff "did not properly exhaust his administrative remedies." *Id.* at 1355. Rather, the sole dispute was "whether the grievance process was 'available' to [the plaintiff]." *Id.* The plaintiff argued that the process was unavailable due to his mental disabilities and misleading assistance from a prison official. *Id.* Resultantly, the Eleventh Circuit stated that since proper exhaustion was not at issue, it would not address *Turner*'s two-step analysis. *Id.* at 1355 n.12. Instead, it would focus on the availability of the grievance procedure. *Id.* (citing *Turner*, 541 F.3d at 1082; *cf. Dimanche v. Brown*, 783 F.3d 1204, 1214

---

[10] This year, in *Perttu v. Richards*, 605 U.S. 460 (2025), the Supreme Court held "that parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." *Id.* at 479. *Perttu* impacts and modifies the application of *Turner*'s holding in cases where the issue of administrative exhaustion is intertwined with the merits of the claim. However, this issue does not arise in the present case.

n.3 (11th Cir. 2015) (declining to address the availability analysis because the exhaustion requirements were satisfied)).

Another Eleventh Circuit decision further discussed a prison official's burden to demonstrate the availability of the administrative remedy. In *Wright v. Georgia Department of Corrections*, 820 F. App'x 841 (11th Cir. 2020) (per curiam), the Eleventh Circuit discussed *Turner*'s availability standard in evaluating an exhaustion defense under the PLRA. The plaintiff-inmate contended, citing *Turner*, that the district court improperly shifted the burden of proof onto him regarding the availability of administrative remedies. *See id.* at 845. Disagreeing, the Eleventh Circuit said:

> [The plaintiff] confuses the issue of whether a remedy is generally available (*i.e.*, a grievance procedure exists) with whether a remedy was available to him practically speaking. Nothing in *Turner* dictates that defendants initially establish this latter meaning of availability in establishing a lack of exhaustion. Instead, *Turner* mandates that "defendants bear the burden of proving that the plaintiff has failed to exhaust his *available* administrative remedies," which includes showing that a remedy is generally available. 541 F.3d at 1082 (emphasis added). Indeed, it is difficult to conceive of how a defendant could show that a plaintiff failed to exhaust his remedies without showing that there was a remedy to be exhausted. In response, the plaintiff may defeat the failure-to-exhaust argument by showing that the general remedy was effectively unavailable to him.

*Wright*, 820 F. App'x at 845. In *Wright*, the plaintiff argued that the grievance procedure at the Georgia Department of Corrections essentially "was an unavailable dead end," as wardens never approved inmate grievances related to medical

20

treatment. *Id.* The Eleventh Circuit held that the plaintiff had "provided no factual support for his assertion." *Id.* Consequently, it affirmed the district court's decision that the defendants had met their burden of showing that the plaintiff did not exhaust available remedies and that the plaintiff had failed to show that the remedy "was effectively unavailable to him." *Id.*

In the unpublished *Blevins* decision, the Eleventh Circuit applied *Ross*'s unavailability exception within the context of a § 2241 petition. This court will adopt the same approach. However, to the extent *Blevins* addresses the burden(s) differently than in the published decision in *Geter*, the court will adhere to *Geter* as to the burden-shifting analysis. Notably, *Geter* is factually similar to this case, as both involve an undisputed failure by the prisoner to properly exhaust administrative remedies, with the primary issue being "whether the grievance process was 'available' to [the prisoner]." 974 F.3d at 1355. Hence, as described in *Geter*, "[w]hile the burden is on the [respondent] to show an available administrative remedy, once that burden has been met, the burden of going forward shifts to the [petitioner], who, pursuant to *Turner*, must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him." *Id.* at 1356 (quoting *Turner*, 541 F.3d at 1085). This analysis is detailed in Part III.C.6.

5.    *Futility as an Exception to Administrative Exhaustion Under § 2241*

In addition to citing *Ross*'s unavailability exceptions to exhaustion of administrative remedies, Petitioner also argues that exhaustion would be futile.  (*See* Doc. # 1 at 2, ¶ 10 ("Examples of situations in which the remedy process presents no actual potential for relief include when the effect is futile.").)   Respondent contends that under § 2241, failure to exhaust cannot be excused due to futility, citing two Eleventh Circuit cases:  *Rey v. Warden, FCC Coleman-Low*, 359 F. App'x 88 (11th Cir. 2009) (per curiam), and *McGee v. Warden, FDC Miami*, 487 F. App'x 516 (11th Cir. 2012) (per curiam).  (Doc. # 11 at 5–6.)  Both cases barred any futility exception to the pre-filing, administrative-exhaustion requirement.  *See Rey*, 359 F. App'x at 91 ("[T]he futility exception to exhaustion is inapplicable to [the petitioner's § 2241] claim because exhaustion is mandatory."); *see also McGee*, 487 F. App'x at 518 ("[Petitioner] has not cited any case establishing that there is a futility exception to the requirement to exhaust administrative remedies under § 2241 . . . .").   However, these cases were decided prior to *Santiago-Lugo*'s determination that circuit precedent requiring exhaustion of administrative remedies as a jurisdictional requirement for § 2241 petitions had been "undermined to the point of abrogation."  *Santiago-Lugo v. Warden*, 785 F.3d 467, 471–75 & nn.4–5 (11th Cir. 2015).  The impact of *Santiago-Lugo* on the applicability of a futility exception has not yet been addressed in a published Eleventh Circuit decision.  *See,*

*e.g.*, *Straughter v. Warden FCC Coleman-Low*, 699 F. Supp. 3d 1304, 1307–08 (M.D. Fla. Oct. 18, 2023) (declining to categorically bar a potential futility exception based on authority cited by the respondent that relied on the Eleventh Circuit's pre-*Santiago-Lugo* understanding of exhaustion when imposing that categorial bar in the first instance).

To date, whether there is a futility exception to the "judge-made" exhaustion requirement applicable to § 2241 petitions is "an unsettled question in the Eleventh Circuit after *Santiago-Lugo*." *Cros-Toure v. Neely*, 2024 WL 2178618, at *2 (N.D. Ala. Mar. 4, 2024), *R. & R. adopted*, 2024 WL 2163851 (N.D. Ala. May 14, 2024). However, in the years since *Santiago-Lugo*, some district courts within the Eleventh Circuit, including the Northern District of Alabama in *Cros-Toure*, have found that, if such an exception exists, it necessitates demonstrating "extraordinary circumstances," with the burden of showing futility resting on the inmate. *Id.* (citing *Jaimes v. United States*, 168 F. App'x 356, 359 (11th Cir. 2006) (per curiam) (further citation omitted)); *see also, e.g.*, *Carrillo v. Warden FPC Pensacola*, 2025 WL 1439526, at *2 (N.D. Fla. Apr. 21, 2025) (recommending dismissal of the petitioner's § 2241 petition because he failed to exhaust his administrative remedies and did not present extraordinary circumstances that would justify exemption from the exhaustion requirement), *R. & R. adopted*, 2025 WL 1433566 (N.D. Fla. May 19, 2025); *Gomez-Feliz v. Jenkins*, 2024 WL 5700925, at *2 (N.D. Ga. Dec. 16,

2024) (acknowledging that no futility exception to the exhaustion requirement under § 2241 had been established, but even if this exception existed, it would "apply only in extraordinary circumstances," and concluding that the inmate had failed to demonstrate such circumstances (citing *Jaimes*, 168 F. App'x at 359)). *But see Ochoa-Vasquez v. Swaney*, 2024 WL 2967269, at *4 (S.D. Ga. Apr. 23, 2024) ("There is no futility exception to the exhaustion requirement in a § 2241 proceeding." (cleaned up)); *Perez v. Joseph*, 2022 WL 2181090, at *2 (N.D. Fla. May 4, 2022) ("[T]here are grounds for doubt that a futility exception is available on a § 2241 petition in this circuit." (quoting *Tankersley v. Fisher*, 2008 WL 4371797, at *3 (N.D. Fla. Sep. 22, 2008))).

Two decisions above relied upon *Jaimes*, which also is a pre-*Santiago-Lugo* decision. Under the precedent at the time, which considered § 2241's exhaustion requirement as jurisdictional, *Jaimes* assumed for the sake of argument that the petitioner could claim futility. 168 F. App'x at 359. In *Jaimes*, the Eleventh Circuit referenced an out-of-circuit decision upon which the petitioner relied to argue futility, without explicitly accepting or rejecting that decision's premise. *Jaimes* noted, though, that the out-of-circuit decision stated that exceptions to the exhaustion requirement apply only in "extraordinary circumstances" and that the petitioner "bears the burden of demonstrating the futility of administrative review." *Id.* (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam)). Under this

standard, the Eleventh Circuit determined that the district court correctly denied the § 2241 petition because the petitioner failed to demonstrate extraordinary circumstances or sufficiently explain why pursuing administrative review would be futile. *Id.*

*Jaimes* does not provide clear guidance on the applicability of a futility exception under § 2241 after *Santiago-Lugo*. Considering the shift in this circuit's interpretation of the exhaustion requirement post-*Santiago-Lugo*, it would be inappropriate to categorically dismiss a potential futility exception based on case law decided before *Santiago-Lugo*. The court will consider whether any of Petitioner's contentions present valid futility exceptions, as done in *Cros-Toure* and *Gomez-Feliz*. However, this task is challenging. While some district courts in the Eleventh Circuit recognize the potential for a futility exception, the decisions focus on why the specific circumstances alleged do not qualify as extraordinary. In practice, decisions addressing futility generally conclude that no extraordinary circumstances are present, reflecting a general reluctance to excuse a prisoner's noncompliance with an administrative-remedy process.

**6.    *Whether the BOP's Administrative-Remedy Program Was Available to Petitioner or Whether Exhaustion Would Have Been Futile***

In his petition, Petitioner makes no mention of any attempt to exhaust administrative remedies at any level. Indeed, he seemingly concedes his failure to exhaust. (*See* Doc. # 1 at 7.) In response to the petition, raising the affirmative

defense of failure to exhaust, Respondent has submitted a declaration from an attorney advisor with the BOP. (*See* Doc. # 11-1 (Decl. of A. McCall Young).) In the declaration, the attorney advisor details the administrative-remedy program in place at the BOP (Doc. # 11-1 at 3, ¶¶ 6–7) and states that a review of the BOP's SENTRY records reveals that Petitioner has not filed any administrative remedy "related to the claims made in his Petition." (Doc. # 11-1 at 4, ¶ 11.) Young's declaration and the accompanying SENTRY record demonstrate that the BOP's administrative-remedy program is available and that Petitioner did not attempt to commence—let alone exhaust—that process.

In his reply brief, Petitioner does not challenge Respondent's contentions or evidence that he failed to initiate or complete any step in the BOP's administrative-remedy program concerning the contentions in his petition. He also does not contest the existence of the BOP's administrative-remedy program. A review of the petition, response brief, and reply brief demonstrates that there is no dispute in the facts concerning (1) the general availability of a grievance procedure within the BOP and (2) the fact that Petitioner did not properly exhaust that grievance procedure. *See Wright v. Ga. Dep't of Corr.*, 820 F. App'x 841 (11th Cir. 2020) (per curiam) ("*Turner* mandates that 'defendants bear the burden of proving that the plaintiff has failed to exhaust his *available* administrative remedies,' which includes showing that a remedy is generally available." (citation omitted)); *Geter v. Baldwin State*

*Prison*, 974 F.3d 1348, 1355 & n.12 (11th Cir. 2020) (focusing the analysis on whether the grievance process was available to the Plaintiff because the parties agreed that the plaintiff had not properly exhausted his administrative remedies).

The dispute here, as in *Geter*, is not whether Petitioner exhausted available administrative remedies—he did not, and that point is undisputed. Rather, the focus is on whether the BOP's administrative-remedy program was "'subjectively' and 'objectively' unavailable to him." *Geter*, 974 F.3d at 1356. Petitioner also attempts to invoke a futility exception to § 2241's exhaustion requirement.

As to unavailability, the Eleventh Circuit in *Geter*—relying on *Turner*— places the burden on the prisoner to show that the grievance process was both "subjectively" and "objectively" unavailable.[11]   *See* 974 F.3d at 1356; *accord Wright*, 820 F. App'x at 845 (citing *Turner* and holding that once the prison official shows a remedy is generally available, the burden shifts to the prisoner to demonstrate that the generally available remedy was effectively unavailable to him). As for a potential futility exception, the burden likewise would lie on Petitioner. *See, e.g.*, *Cros-Toure v. Neely*, 2024 WL 2178618, at *2 (N.D. Ala. Mar. 4, 2024). Petitioner's arguments focusing on unavailability and futility find no support in the facts or law.

---

[11] While the court follows *Geter* on the allocation of these burdens, the outcome would be the same even if the burden were assigned to Respondent.

First, Petitioner makes several arguments, when liberally interpreted, that arguably fall into the first category the Supreme Court in *Ross* identified as triggering the unavailability exception. *See Ross v. Blake*, 578 U.S. 632, 643–44 (2016). He argues that the BOP "appears to misunderstand" the FSA, making it improbable that further review through "multiple layers of BOP bureaucracy" will rectify this issue, and that the BOP has "a predetermined position of defying the [FSA] through systematic non-compliance with [the] FSA and federal court decisions." (Doc. # 14 at 1–2.) Although Petitioner couches his assertions in a futility exception, it appears that Petitioner is attempting to argue that the BOP's administrative process "operates as a simple dead end," with BOP officials unwilling to provide any relief to aggrieved inmates. *Ross*, 578 U.S. at 643. But these arguments, even liberally interpreted, do not suffice to show unavailability under *Ross* or, alternatively, extraordinary circumstances under a potential futility exception.[12]

The essence of these arguments is that exhaustion should be excused because the BOP is certain to rule against him. However, the court is unaware of any Supreme Court or Eleventh Circuit decision recognizing this ground as a valid

---

[12] Whether Petitioner's arguments for excusing exhaustion arise out of principles of unavailability or futility is unclear, and the lines are blurred as to when an argument of futility is really one of unavailability and vice versa.

exemption for unavailability or futility.[13]  District courts in other circuits have found

that the BOP's administrative remedy process is not futile "simply because a

prisoner anticipates he will be unsuccessful in his administrative appeals." *Williams*

*v. Warden, Allenwood-Low*, 2024 WL 4204277, at *2 (M.D. Pa. Sep. 16, 2024)

(collecting cases).  Additionally, as found by a district court in the Eastern District

of New York, the BOP's prior rejection of similar claims did not render exhaustion

futile, since it was possible for precedent to be overruled and the BOP's general

counsel has the authority to change agency policy.  *See Lallave v. Martinez*, 609 F.

Supp. 3d 164, 180 (E.D.N.Y. 2022) (finding that futility cannot be presumed solely

based on previous unfavorable decisions, as it "is theoretically possible that the

precedent would be overruled" (collecting cases)).  Hence, other district courts have

---

[13] In arguing that "exhaustion requirements should not be applied if pursuing remedies throught the administrative remedies process is futile" (Doc. # 14 at 2), Petitioner string cites cases unhelpful to his position, including *Hrycuna v. Ormond*, 2019 WL 1304250, at *4 (E.D. Va. Feb. 19, 2019), *R. & R. adopted*, 2019 WL 1302592 (E.D. Va. Mar. 21, 2019), which directly opposes his position.  In *Hrycuna*, the magistrate judge's report and recommendation (R&R) acknowledged that the judicially imposed exhaustion requirement in § 2241 can be excused "when pursuit of administrative remedies would be futile." *Id.*  However, the R&R went on to "[a]ccept that § 2241's exhaustion requirement demands compliance with agency procedures to whatever extent possible," *id.*, and it found that the petitioner had failed to comply with those procedures:

> Here, each of [the petitioner's] appeals was rejected because of specific procedural deficiencies. In each instance, [the petitioner] had the opportunity to resubmit his appeal with corrections or an explanation of the deficiency.  He never attempted to do so but instead filed suit in federal court seeking habeas relief.  Excusing the exhaustion requirement in this case would render the BOP disciplinary process a dead letter and invite future disregard of its requirements.

*Id.* at *5.

required more than a mere prediction of an adverse outcome to excuse exhaustion on the grounds of futility.[14]  This reasoning is particularly relevant to Petitioner's argument here, especially given the lack of factual support for his conclusion.

Furthermore, Petitioner's arguments expressing pessimism about the administrative outcome closely resemble those rejected in *Jaimes* and *Wright*.  *See Jaimes v. United States*, 168 F. App'x 356 (11th Cir. 2006) (per curiam); *Wright v. Ga. Dep't of Corr.*, 820 F. App'x 841 (11th Cir. 2020) (per curiam).  In *Jaimes*, the petitioner contended that pursuing administrative remedies would be futile, as he believed the BOP would not rectify his concerns about sentencing credit without judicial intervention.  *See* 168 F. App'x at 359.  Rejecting this argument, the Eleventh Circuit reasoned that the petitioner "d[id] not adequately explain why administrative review would prove futile."  *Id.*  In *Wright*, the § 1983 plaintiff claimed that the grievance procedure at the Georgia Department of Corrections essentially "was an unavailable dead end," as wardens never approved inmate grievances related to medical treatment.  820 F. App'x at 845.  However, the Eleventh Circuit found that the plaintiff had "provided no factual support for his

---

[14] Additionally, the Seventh Circuit's decision in *Greene v. Meese*, 875 F.2d 639 (7th Cir. 1989), is instructive.  The court rejected the prisoner's argument that exhaustion is futile because "the higher-ups in the Bureau of Prisons are bound to turn down [his] remaining requests for relief, just as they turned down his other claims."  *Id.* at 641.  The court noted that while denial was probable, that probability was not a valid reason to waive exhaustion:  "Lightning may strike; and even if it doesn't, in denying relief the Bureau may give a statement of its reasons that is helpful to the district court in considering the merits of the claim."  *Id.*

assertion." *Id.* Consequently, the Eleventh Circuit affirmed the district court's decision that the defendants had met their burden of showing that the plaintiff did not exhaust available administrative remedies and that the plaintiff had failed "to defeat" that showing. *Id.*

Similarly, as in *Jaimes* and *Wright*, Petitioner speculates, without a factual basis, that he will not receive a favorable administrative ruling. He offers only conclusory statements asserting nothing more than his mere belief that exhaustion of administrative remedies would be futile. *See Higginbottom v. Carter*, F.3d 1259, 1261 (11th Cir. 2000) (holding that an inmate's belief that administrative procedures are futile or needless does not excuse exhaustion in the context of the PLRA); *see also Martin v. Neely*, 2024 WL 4521942, at *1 (N.D. Ala. Sept. 19, 2024) ("[Section 2241 petitioner's] belief that exhaustion would have been futile is entirely conclusory and thus insufficient to excuse her failure to exhaust."), *R. & R. adopted*, 2024 WL 4520939 (N.D. Ala. Oct. 17, 2024); *Alanis v. Neely*, 2024 WL 532338, at *1 (N.D. Ala. Jan. 19, 2024) ("[The petitioner's] futility argument is unavailing because she points to no extraordinary circumstances. She does not argue that there was any barrier to the remedy process. Instead, she simply filed her habeas petition without first giving BOP officials the opportunity to address her complaints internally. [Her] futility claim is entirely conclusory and based on her personal beliefs. Such an argument cannot excuse a failure to exhaust." (citation omitted)),

---

*R. & R. adopted*, 2024 WL 520021 (N.D. Ala. Feb. 9, 2024).  It is not possible to find futility in this case, as Petitioner neither initiated the administrative remedy process nor demonstrated any extraordinary circumstances that would justify his failure to do so.

Second, Petitioner argues that, pursuing the BOP's administrative-remedy program would be futile and "exacerbate the irreparable harm" to him because "the time to remedy the problem has already passed," and Respondent has taken no corrective action.  (Doc. # 1 at 2–3.)  This argument is untenable because Petitioner did not give Respondent an opportunity to address his claims through the administrative-remedy program before claiming that relief cannot be obtained promptly.  By not allowing BOP officials a chance to correct the alleged mistake, Petitioner undermines his argument for excusing the exhaustion requirement.  The exhaustion doctrine is designed to give BOP officials an opportunity to resolve inmates' grievances before judicial intervention is sought.  Furthermore, the offending FSA Time Credit Assessment, which reduced Petitioner's projected FSA conditional placement days and extended his conditional placement date from December 20, 2025, to October 31, 2026, is dated December 30, 2024.  (Doc. # 1 at 5; Doc. # 1-2 at 2 (BOP's FSA Time Credit Assessment, dated Dec. 30, 2024); *see also* Doc. # 1-1 at 2).)

On a standard exhaustion schedule, the administrative-remedy process would have spanned 160 days (20 days for filing the BP-9 request; 20 days for the warden's response; 20 days for filing the BP-10 appeal; 30 days for the regional director's response; 30 days for filing the BP-11 appeal; and 40 days for the general counsel's response). *See* 28 C.F.R. § 542.10 *et seq*. On that timeline, it appears that exhaustion could have been completed by approximately mid-May 2025. It is challenging to establish a realistic timeline where exhaustion would have been unfeasible. While extensions or justified delays can lengthen the process, *see Davis v. Warden, FCC Coleman-USP I*, 661 F. App'x 561, 562 (11th Cir. 2016), if Petitioner had initiated the exhaustion process and encountered an obstacle along the way, he could have filed his § 2241 petition and argued futility at that point. A true timeline for exhaustion cannot be determined because Petitioner never began the administrative-remedy process. Instead of promptly initiating the BOP's administrative-remedy program after receiving the December 30, 2024 FSA Time Credit Assessment, Petitioner waited nearly eight weeks—until February 22, 2025—to file an unexhausted petition in federal court. Based on these facts, construed favorably to Petitioner, his failure to attempt to exhaust undermines his claim of futility and his argument that the risk of irreparable harm justifies bypassing the exhaustion requirement.

It also warrants repeating here that, as clarified in his reply brief, Petitioner is challenging the BOP's regulations themselves, rather than their application to him personally. (*See* Doc. # 1 at 3–7, as clarified in Doc. # 14 at 4–5.) He seeks judicial review of the BOP's regulations that led to the withholding of his FSA earned time credits. Although a favorable ruling might indirectly benefit him by affecting his credits, his claims do not directly challenge the BOP's decisions in his individual situation. Hence, his futility arguments that focus on his personal circumstances are less compelling in the context of a challenge to a BOP regulation.

Third, in his reply brief, Petitioner reiterates his previous argument with slightly different phrasing, insisting nonetheless that he should have been transferred to prerelease custody "months ago" and asserting that, therefore, requiring administrative exhaustion will cause "irreparable injury." (Doc. # 14 at 2.) This argument presupposes an entitlement to Second Chance Act (SCA) credits that have not been granted. (Doc. # 1 at 4.) But the SCA "does not authorize a federal court to order the BOP to release a prisoner—the Act only states the Attorney General 'may' release eligible elderly offenders." *United States v. Calderon*, 801 F. App'x 730, 731–32 (11th Cir. 2020) (per curiam) (citing 34 U.S.C. § 60541(g)(1)(B)); *see also id.* ("The [SCA] makes no mention of federal courts and does not grant any authority to the federal courts."). Additionally, the argument is not anchored in a

properly exhausted challenge to a specific BOP regulation. Accordingly, incorporating the SCA theory does not help Petitioner's futility argument.

Fourth, Petitioner argues that his failure to exhaust administrative remedies should be excused because his § 2241 petition involves a question of statutory interpretation. (Doc. # 14 at 2.) This contention does not fit the criteria for unavailability outlined in *Ross v. Blake*, 578 U.S. 632 (2016). Instead, Petitioner asserts that "multiple circuits have recognized that even prudential exhaustion requirements must yield to cases like this one where the challenge involves statutory interpretation rather than factual disputes." (Doc. # 14 at 2.) In support of this assertion, Petitioner cites two cases. The first case, *Geiger v. United States*, which Petitioner cites as "502 F.2d 1290, 1292–93 (8th Cir. 1974)," does not appear to exist.[15] The second case, *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004),[16] provides no support for Petitioner's contended statutory-interpretation exception to the exhaustion requirement. The *Elwood* petitioner's failure to exhaust his administrative remedies was excused because the government waived the

---

[15] A search for the case at the citation provided by Petitioner turns up a case called *United States v. Ingham*, 502 F.2d 1287 (5th Cir. 1974), which has nothing to do with the administrative-exhaustion requirement or any potential exceptions thereto. Independent research turned up a case brought by a *pro se* plaintiff in the Middle District of Pennsylvania, but it analyzes exhaustion in the context of the Federal Tort Claims Act and does not mention a statutory-interpretation exception. *See generally Geiger v. United States*, 2023 WL 3136405 (M.D. Pa. Apr. 27, 2023).

[16] Petitioner incorrectly cites the *Elwood* case as *Elwood v. Jeter*, **368** F.3d 842, 844 n.1 (8th Cir. 2004) (emphasis added). (*See* Doc. # 14 at 2.)

requirement when it conceded that "[the petitioner's] continued use of the grievance procedure to contest the validity of the BOP's new policy would be futile," not because his case involved a question of statutory interpretation. *Id.* at 844 n.1. Respondent in this case did not waive the requirement that Petitioner exhaust his administrative remedies before filing, as evidenced by his raising the issue of Petitioner's failure to exhaust in his response. (*See* Doc. # 11 at 1, 3, 7.) Additionally, in a recent decision examining a § 2241 petitioner's argument that exhaustion is not requirement when a claim presents a question of statutory interpretation, a district court in the Northern District of Alabama said, "[T]he court is unable to locate any Eleventh Circuit precedent recognizing an exception to the administrative exhaustion requirement for a claim that presents a question of statutory interpretation." *Nuckles v. Yeager*, 2025 WL 1490057, at *2 (N.D. Ala. May 22, 2025). Petitioner's arguments for excusing exhaustion based on statutory interpretation lack supporting authority and misinterpret the cited cases.

Fifth and finally, Petitioner cites three additional cases to support his futility argument generally, but these cases fail to substantiate his position. (Doc. # 1 at 2; Doc. # 14 at 2.) In *Woodford v. Ngo*, the United States Supreme Court held that under the PLRA, "[e]xhaustion is no longer left to the discretion of the district court,

but is mandatory."[17]  548 U.S. 81, 85 (2006).  As for *Putnam v. Winn*, the court recognized that if a court has habeas jurisdiction, "a common law exhaustion rule applies, which can be waived if exhaustion would be futile."  441 F. Supp. 2d 253, 255 (D. Mass. 2006).  However, significantly, the *Putnam* court went on to say that "[t]he petitioner has not demonstrated he properly exhausted his administrative remedies, *but all parties agree that exhaustion would be futile here* and therefore waivable."  *Id.* (emphasis added).  Finally, the petitioner in *United States v. Basciano* initiated the administrative review process and submitted multiple requests for administrative remedies before seeking habeas relief.  *See* 369 F. Supp. 2d 344, 348–49 (E.D.N.Y. 2005).  This is in stark contrast to Petitioner here who did not attempt to initiate, let alone exhaust, the administrative-remedy process.  Petitioner's reliance on *Woodford*, *Putnam*, and *Basciano* fails to substantiate a futility argument.

Based on the foregoing, Respondent has met his burden to show that Petitioner failed to exhaust properly the BOP's available administrative-remedy program. Petitioner failed to show that this remedy was effectively unavailable to him or that availing himself of this remedy would be futile.  Therefore, Petitioner's § 2241 petition must be dismissed for failure to exhaust administrative remedies.

---

[17] Petitioner, however, cites the concurring opinion in which Justice Breyer recognizes the "well-established exceptions to exhaustion found in administrative law."  *Woodford*, 548 U.S. at 103 (Breyer, J., concurring) (collecting cases).

## IV. CONCLUSION

While this court properly exercises subject matter jurisdiction, Petitioner failed to properly exhaust available administrative remedies before filing a § 2241 petition. Petitioner's arguments that the BOP's administrative-remedy program is unavailable to him or that exhaustion is futile are unavailing. Petitioner has provided no reason, factual or otherwise, to justify a finding that the BOP's administrative-remedy program is unavailable to him. Additionally, assuming futility is an exception to exhaustion under § 2241, Petitioner has not presented extraordinary circumstances demonstrating the futility of administrative review. Petitioner's § 2241 petition is premature until such time as he exhausts the BOP's administrative-remedy program.

Based on the foregoing, it is ORDERED as follows:

(1)    Respondent's construed Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is DENIED;

(2)    Respondent's construed Rule 12(b) motion to dismiss for failure to exhaust administrative remedies is GRANTED without prejudice; and

(3)    The Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 is DISMISSED without prejudice.

Final Judgment will be entered separately.

DONE this 20th day of November, 2025.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE